UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

NO. 12-00061-JJB-SCR

BLAS MARTINEZ-ALVAREZ
YUNIEL MEDINA ARRIETA

**RULING ON MOTION TO SUPPRESS**

This matter is before the Court on motions by Defendants Yuniel Medina Arrieta ("Arrieta") (Doc. 23) and Blas Martinez Alvarez ("Alvarez") (Doc. 22) to suppress. Arrieta and Alvarez are charged with use of counterfeit access devices in violation of Title 18, United States Code, Section 1029(a)(1) and (2), and with possession of counterfeit and unauthorized access devices in violation of Title 18, United States Code, Section 1029(a)(3) and (2). (Indictment, Doc. 1). Arrieta and Alvarez move to suppress evidence police obtained during a traffic stop on May 3, 2011. (Doc. 23 & Doc. 22). Arrieta and Alvarez filed memoranda in support (Doc. 24 & Doc. 22), to which the United States filed a consolidated response in opposition. (Doc. 37). The Court held two evidentiary hearings, the first on July 5, 2012 (Minute Entry, Doc. 41), and the second on July 23, 2012. (Minute Entry, Doc. 45). Arrieta and Alvarez filed post-hearing memoranda (Doc. 49 & Doc. 50), but the United States did not.

I.

The Court makes the following factual findings based on the evidence presented at the hearings. On May 3, 2011, Arrieta was the rear-passenger in a vehicle traveling westbound on Interstate 10 operated by Adolfo Gonazlez ("Gonzalez"). Officer Guidry observed the vehicle cross the fog line and hit the rumble strips three times and initiated a traffic stop, ordering the driver to exit the vehicle. Officer Guidry approached Gonzalez and spoke to him explaining the reason for the stop, and discerned that Gonzalez's knowledge of English was limited. After obtaining Gonzalez's license, Officer Guidry approached the vehicle to obtain identification from the two passengers. Officer Guidry spoke to the front-seat passenger, Alvarez, who informed Officer Guidry that he knew a little English. After returning to the police cruiser to run a computer check through dispatch, Officer Guidry called Sergeant Fabre because he intended to conduct a search of the vehicle and Sergeant Fabre had Spanish training. When Sergeant Fabre arrived, Officer Guidry directed Gonzalez to Sergeant Fabre's cruiser, where Sergeant Fabre spoke to Gonzalez in Spanish and obtained consent to search the vehicle approximately fifteen minutes into the stop. After Sergeant Fabre indicated that he had received consent from Gonzalez, Officer Guidry approached the vehicle to conduct the search. When he approached, he advised the passengers that he was conducting a search and observed Arrieta shove something underneath the rear seat. After ordering the passengers out, Officer

Guidry searched under the seat and secured a plastic Best Buy bag, which contained multiple recoded credit and gift cards. Officer Guidry did not ask Arrieta permission to search the bag, and none of the passengers objected to the search of the bag, nor identified the bag as his.

The stop lasted approximately one hour. After Officer Guidry initially obtained the passengers' identifications, he returned to his vehicle to perform warrant checks. Officer Guidry had the option to either perform the checks via dispatch or via computer, and Officer Guidry chose to perform the checks via dispatch. Officer Guidry began to receive information approximately thirty-five to forty minutes after the initial stop. The criminal history was received approximately two hours later. Officer Guidry testified that the delay for information via dispatch was due to an air vac wreck that had occurred earlier in the evening.

Arrieta and Alvarez seek to have any evidence relating to the stop suppressed because (1) Gonzales did not give informed consent permitting the police to conduct a warrantless search, (2) the detention was unreasonably long, rendering any evidence seized pursuant to the stop to be fruit of the poisonous tree, and (3) Arrieta's separate consent was needed to search the Best Buy bag because it was Arrieta's personal property. In response, the government argues that (1) Alvarez and Arrieta lack standing to challenge the search, (2) the initial stop was justified and the time required to obtain the criminal checks justified the length of the stop, and (3) separate consent was not needed to search the Best

Buy bag because none of the passengers claimed ownership of the bag and because the bag contained credit cards and gift cards, it is not the type of locked container that holds belongings.

II.

The Fourth Amendment protects against "unreasonable searches and seizures" of people's "persons, houses, papers, and effects." U.S. Const. Amend. IV. It is well settled that warrantless searches and seizures are "per se unreasonable" except for clearly defined circumstances. *Katz v. United States*, 389 U.S. 347, 357 (1967). Therefore, for any warrantless search and seizure, the government bears the burden of proof. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

The initial question that Court must address is whether Arrieta and Alvarez have standing to challenge the search of the vehicle. The government contends that Arrieta and Alvarez lack standing to challenge whether consent was voluntarily given because they had no reasonable expectation of privacy. Doc. 37). In order for a defendant to challenge the lawfulness of a search, the defendant must have an expectation of privacy in the area searched. *See Rakas v. Illinois*, 439 U.S. 128 (1978). The Fifth Circuit Court of Appeals has held that a "passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed." *U.S. v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993). However, because a stop is a seizure of both the driver and the passenger, a passenger "does have standing

4

to challenge the seizure as unconstitutional." *Id.* The Court finds that Arrieta and Alvarez cannot challenge whether Gonzales's consent was informed because Arrieta and Alvarez, as passengers, lacked the requisite privacy interest. Thus, the Court will not address Arrieta and Alvarez's arguments that Gonzalez's consent was not informed. However, the Court finds that Arrieta and Alvarez can challenge the constitutionality of the stop.

When assessing the constitutionality of a traffic stop, courts apply the two-prong test established in *Terry v. Ohio*, 329 U.S. 1 (1968). *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). Under this test, courts assess whether (1) "the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 329 U.S. 1, 19-20 (1968). The level of suspicion required to justify an officer's actions in executing a *Terry* stop is reasonable suspicion, and not probable cause. *United States v.* Sokolow, 490 U.S. 1, 7 (1989). An officer's "objectively reasonable suspicion" that a traffic violation has occurred justifies a *Terry* stop at its inception. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). A reviewing court must "look at the 'totality of the circumstances' of each case" to determine whether there was reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted). Here, Arrieta does not challenge the inception of the stop, and Alvarez took the initial position that if the vehicle were swerving across the fog lines, then the stop

would be justified. (Doc. 22-1). However, after the evidentiary hearing, Alvarez disputed the existence of a traffic violation. (Doc. 50).

The Court finds that the traffic stop was justified at its inception. Officer Guidry testified at the evidentiary hearing that the tire crossed the fog line enough to hit the rumble strips three times. In *United States v. Wilkerson*, the Fifth Circuit found that an officer was justified in stopping a driver whom the officer believed crossed the fog line in violation of Louisiana Revised Statute 32:79. *United States v. Wilkerson*, 405 Fed. Appx. 893, 895 (5th Cir. 2010). The Court finds that Officer Guidry was justified in stopping the vehicle and the first prong of the *Terry* test has been met.

After a valid traffic stop has been made, an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 329 U.S. 1, 19-20 (1968). It is well-settled that officers are permitted to examine driver's licenses and vehicle registrations and run computer checks as part of investigating the circumstances that justified the initial stop. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010); *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004). However, it is also well-settled that an initially lawful seizure can violate the Fourth Amendment if "its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes,* 543 U.S. 405, 407 (2005); *United States v. Jacobsen*, 466 U.S. 109, 124 (1984).  The Supreme Court of the United States has noted that it is important to assess "whether the police diligently pursued a

means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). However, the Court explained that the inquiry turns not on "whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Id.* at 687.

Here, Arrieta and Alvarez argue that it was unreasonable for Officer Guidry to request information via dispatch instead of via computer when Officer Guidry knew that the dispatch response would be affected due to a wreck. (Doc. 49 & Doc. 50). The Court agrees. Although Officer Guidry stated that he believed the dispatch would be quicker, he also testified that he had never done a computer check. (Doc. 44). At some point, thirty minutes or so into the stop when no dispatch response was received, Officer Guidry should have realized that the dispatch request was not working and should have run a computer check. A reasonable officer should have known that he was entering unconstitutional territory regarding the length of the stop, at least under the facts of this case.

The final question that the Court must address is whether separate consent was needed to search the Best Buy bag. Arrieta argues that the Best Buy bag was his personal property and that Officer Guidry failed to obtain Arrieta's consent prior to searching the bag. Arrieta further argues that Officer Guidry saw that Arrieta was in possession of the bag and had reason to believe that the bag belonged to Arrieta. Arrieta contends that the law is well-settled that

separate consent is required to search a passenger's suitcase or purse, and that this same separate consent is required to search the shopping bag.

It is clear that warrantless searches violate the Fourth Amendment unless there is an applicable exception, such as consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). It is also clear that a driver's consent to a search of all property in the vehicle is only valid if the driver has "actual or apparent authority to consent to a search" of the property. *United States v. Jaras*, 86 F.3d 383, 389 (5th Cir. 1996). Actual authority "requires proof that the consenting party and the party challenging the search" both had access, control, and use over the property. *Id.* Apparent authority requires a reasonable belief that the person giving consent had authority to give consent to a search of all the property. *Id.*

In *Jaras*, the driver consented to a search of the car while standing outside the vehicle, while the defendant-passenger, Jaras, remained in the car. *Id.* at 386. The officer conducting the search opened the trunk and found a "garment bag and two suitcases." *Id.* The driver explained that the garment bag was his, but the suitcases belonged to Jaras. *Id.* The officer summoned Jaras and explained that the driver had given permission to search the car and searched both the garment bag and the suitcases. *Id.*

The United States Court of Appeals for the Fifth Circuit found that the driver lacked actual and apparent authority to consent to a search of the passenger's property, and therefore, the search was unreasonable. *Id.* at 389-90. The driver lacked actual authority because the presence of Jaras's suitcases in

the car did not give rise to a finding that there was joint use, access or control over the suitcases. *Id.* at 389. Furthermore, the driver lacked apparent authority because the driver "clearly informed" the officer that the "suitcases were not his," which demonstrated that the driver "did not have the authority to consent." *Id.* Thus, the general consent to the search of the car did not extend to Jaras's suitcases.

Additionally, the Fifth Circuit found that Jaras did not "impliedly consent" to the search merely because he failed to object when the officer searched the suitcase. *Id.* at 390. The Court explained that consent could not be "inferred from Jaras's silence and failure to object because the police officer did not expressly or implicitly request Jaras's consent prior to the search." *Id.*

Other courts have held that a driver's consent to a search does not extend to property in which the property searched was clearly identified as belonging to another person not giving consent. *See United States v. Cantu*, 426 Fed.Appx. 253, 2011 WL 1899490 (5th Cir. 2011); *United States v. Infante-Ruiz*, 13 F.3d 498 (1st Cir. 1994);

However, the Fifth Circuit has found that a general consent to a search of a vehicle by the driver extends to property that is in "plain view" and no indicia of ownership. *United States v. Navarro*, 169 F.3d 228, 232 (5th Cir. 1999). In *Navarro*, the driver consented to a search of the vehicle, and the officer searched a duffle bag that was on "the back seat of the vehicle on which [passenger] had been leaning." *Id.* at 230. The Court distinguished the facts in *Navarro* from

*Jaras*, and found that the driver's consent included the duffle bag. *Id.* at 232.

Unlike *Jaras*, the driver did not indicate that the bag was not his, and also, unlike

*Jaras*, the bag was in "plain view". *Id.* Finally, the Court noted that neither the

driver nor the passenger "objected to the officer's search of the bag." *Id.*

III.

After careful review of the facts, this Court finds that the law in *Jaras* is

controlling and that the driver, Gonzalez, had neither actual nor apparent

authority to consent to the search of the Best Buy bag. Because the bag was in

Arrieta's possession for the duration of the stop until he was ordered out of the

vehicle, it is difficult to say that Gonzalez and Arrieta both had access, control,

and use over the bag. As Officer Guidry testified, "the only person [he] saw

handling that bag was Mr. Arrieta," and "the only person [he] saw in possession

of that bag was Mr. Arrieta." (Doc. 48, p. 57). Therefore, Gonzalez did not have

actual authority to give consent to the search.

Additionally, although Gonzalez did not explicitly state that the bag

belonged to Arrieta, there was an indication of ownership because the bag was in

Arrieta's possession and Arrieta was the one who placed it under the seat. An

officer could not have had a reasonable belief that Gonzalez had the authority to

give consent to a search of a bag that was in someone else's possession.

Therefore, there was no apparent authority justifying the search of the bag.

Finally, although Arrieta did not object to the search of the bag, this still

does not give rise to consent. Officer Guidry did not obtain or attempt to obtain

Arrieta's consent prior to searching the bag, and therefore, Arrieta's silence cannot be construed as consent.

The Court finds that the search of the bag was warrantless and in violation of the Fourth Amendment. The Court further finds that the duration of the initially lawful stop violated the Fourth Amendment. Accordingly, Arrieta's motion to suppress (Doc. 23) is GRANTED. Alvarez's motion to suppress (Doc. 22) is GRANTED.

Signed in Baton Rouge, Louisiana, on October 11th, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**